**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | **CIVIL ACTION NO.** |
| v. | ) ) | **COMPLAINT** |
| M&T BANK CORPORATION, | ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) | |
| _____ | ) | |

NATURE OF THE ACTION

This is an action brought under Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Carmen Gaillard and other individuals who were affected by such practices ("Aggrieved Individuals").  Plaintiff, the United States Equal Employment Opportunity Commission ("EEOC") alleges that Hudson City Savings Bank ("HCSB") violated the ADA when it: (1) denied reasonable accommodations to Aggrieved Individuals in the workplace; (2) involuntarily placed or kept Aggrieved Individuals on leave because of their disabilities, including their substantially limiting impairments and their being regarded as disabled, and/or because of the need to provide reasonable accommodation to their disabilities, and, in some cases, (3) subsequently discharged Aggrieved Individuals who were on leave, because of their disabilities, including their substantially limiting impairments and their being regarded as disabled, and/or because of the need to provide reasonable accommodation to their disabilities.  The violations generally resulted from HCSB's long-standing, inflexible practice of placing employees with impairments or disabilities on involuntary leave unless and until it received from their medical providers clearance to return to work with no restrictions.

Defendant M&T Bank Corporation ("M&T" or "Defendant") acquired Hudson City Bancorp, Inc. and its subsidiary HCSB in November 2015, assumed their liability for these violations, and is the successor to HCSB. Defendant is liable for these unlawful employment practices.  In addition, Defendant continued and/or failed to correct these practices.

<u>JURISDICTION AND VENUE</u>

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the ADA, as amended, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3); and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of New York.

<u>PARTIES</u>

3.      Plaintiff, the United States Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA, and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4.      At all relevant times, Defendant has continuously been a New York corporation, doing business in State of New York and the County of Westchester, and employing at least fifteen (15) employees.

5.      At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(2) of the ADA, 42 U.S.C. § 12111(2), and

Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections

701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) & (h).

6.      At all relevant times, Defendant has been a covered entity under Section 101(2) of

the ADA, 42 U.S.C. § 12111(2).

7.      On or about November 1, 2015, Defendant acquired Hudson City Bancorp, Inc.

and its subsidiary HCSB.

8.      HCSB had continuously been a Delaware corporation, doing business in State of

New York and the County of Westchester, and employing at least fifteen (15) employees, at all

times relevant to this Complaint.

9.      HCSB had continuously been an employer engaged in an industry affecting

commerce under Sections 101(2) of the ADA, 42 U.S.C. § 12111(2), and Section 101(7) of the

ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title

VII, 42 U.S.C. §§ 2000e(g) & (h), at all times relevant to this Complaint.

10.     HCSB was a covered entity under Section 101(2) of the ADA, 42 U.S.C.

§ 12111(2), at all times relevant to this Complaint.

## ADMINISTRATIVE PROCEDURES

11.     More than 30 days prior to the institution of this lawsuit, Carmen Gaillard filed a

Charge of Discrimination with the Commission alleging violations of the ADA by Defendant.

12.     On May 13, 2016, the Commission issued to Defendant a Letter of Determination

finding reasonable cause to believe that Defendant violated the ADA and inviting Defendant to

join with the Commission in informal methods of conciliation to endeavor to eliminate the

discriminatory practices and provide appropriate relief.

13.     The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

14.     The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

15.     On April 14, 2017, the Commission issued to Defendant a Notice of Failure of Conciliation.

16.     All conditions precedent to the institution of this lawsuit have been fulfilled.

<u>STATEMENT OF CLAIMS</u>

17.     The Aggrieved Individuals were employees of HCSB who had impairments that either substantially limit one or more of their major life activities and/or whom HCSB regarded as being disabled. Accordingly, they are individuals with disabilities within the meaning of the ADA.  For example:

      a.     Gaillard has Achilles tendinitis and bone spurs that substantially limited the major life activities of standing and walking.

      b.     A clerk employed by HCSB in Staten Island, New York ("Staten Island Clerk") had a broken foot, which substantially limited the major life activities of standing and walking.

      c.     A teller in Cherry Hill, New Jersey ("Cherry Hill Teller") experienced pregnancy complications that substantially limiting the major life activities of standing, walking, and lifting.

      d.      A clerk in Jersey City, New Jersey ("Jersey City Clerk") had arthritis, which substantially limited the major life activity of walking and the operation of major bodily functions (musculoskeletal functions).

      e.      Additionally, as set forth below, HCSB regarded such individuals as disabled, as it took prohibited actions against them because of their impairments.

18.     The Aggrieved Individuals were able to perform the essential functions of their jobs with or without reasonable accommodations.

19.     From before 2002 and lasting at least until its acquisition by M&T, HCSB maintained a policy of requiring employees with "potential disabilities" to take leave until a physician provided a full release with no restrictions.

20.     HCSB provided such employees, including employees who requested more than 5 days' leave in connection with a medical condition and employees who requested a reasonable accommodation, with a letter that stated, in part: "You may only return to work if your doctor has provided a written notice of a full release with no restrictions."

21.     HCSB violated the ADA by taking unlawful employment actions against the Aggrieved Individuals, as described below, generally as a result of the policy alleged above and related practices.

22.     Since at least December 2013 and continuing until at least November 2015, HCSB and Defendant violated Section 102(a) and (b)(5)(A) of Title I of the ADA, 42 U.S.C. §§ 12112(a) & (b)(5)(A) by failing to provide reasonable accommodations to the disabilities of Aggrieved Individuals.  For example:

a.  Gaillard, who worked as a bank teller, requested that she be permitted to wear a cam walker boot while working. With this accommodation, Gaillard would have been able to perform all of the essential functions of her job. HCSB invoked its no restrictions policy and denied the request.

b.  The Staten Island Clerk also requested permission to work while wearing a cam walker boot. With that accommodation, she would have been able to perform all of the essential functions of her job. HCSB denied the request.

c.  The Jersey City Clerk required a cane to assist her with walking while in the workplace following surgery related to her disability. HCSB did not make this accommodation. The Jersey City Clerk did not request this accommodation because, from prior experience, she knew that requesting such a request would be futile because HCSB did not grant such requests under its no restrictions policy. Instead, she had to remain on leave instead of returning to work with that accommodation.

23.  Since at least December 2013 and continuing until at least November 2015, HCSB and Defendant violated Sections 102(a) and 102(b)(5)(B) of Title I of the ADA, 42 U.S.C. §§ 12112(a), 12112(b)(5)(B), by placing or keeping Aggrieved Individuals on leave involuntarily because they had actual disabilities, because HCSB and Defendant regarded them as disabled, and/or because of the need to make reasonable accommodations to their impairments. For example:

a.  HCSB invoked its no restrictions policy and required Gaillard to take leave after it learned that she had Achilles tendinitis and bone spurs, even

though she was able to perform her job duties with or without reasonable accommodation.

b.    HCSB required the Cherry Hill Teller to remain on leave after it learned of her pregnancy complications, even though she was able to perform her job duties with or without reasonable accommodation.

24.    Since at least December 2013 and continuing until at least November 2015, HCSB and Defendant violated Sections 102(a) and 102(b)(5)(B) of Title I of the ADA, 42 U.S.C. §§ 12112(a), 12112(b)(5)(B), by discharging Aggrieved Individuals because they had actual disabilities, because HCSB and Defendant regarded them as disabled, and/or because of the need to make reasonable accommodations to their impairments:

a.    HCSB's practice in connection with its no restrictions policy was to prohibit employees from remaining on a medical or disability leave for more than 26 weeks.

b.    HCSB consistently discharged employees who were on a medical or disability leave once they reached 26 weeks of leave (and sometimes earlier than 26 weeks).

c.    Because HCSB required employees to remain on leave if they could not provide a medical clearance "without restrictions," Aggrieved Individuals who were not permitted to return to work were instead discharged after they were on leave for 26 weeks (and sometimes earlier than that).

d.    Accordingly, HCSB discharged Aggrieved Individuals because of their disabilities, including substantially limiting impairments and being

regarded as disabled, instead of returning them to work and/or making accommodations to those disabilities where needed.

e. For example, after Gallaird was on leave (involuntarily) for 26 weeks, HCSB discharged her. It did so because she had a physical impairment substantially limiting a major life activity (and/or it regarded her as disabled) and/or because she needed to wear a cam walker boot in the workplace.

f. As another example: HCSB also discharged the Cherry Hill Teller after she had been on leave (involuntarily) for 26 weeks.  It did so because she had a physical impairment substantially limiting a major life activity (and/or it regarded her as disabled) and/or because she needed a reasonable accommodation.

25. Each of the unlawful employment practices complained of above was intentional.

26. Each of the unlawful employment practices complained of above was done with malice or with reckless indifference to the Aggrieved Individuals' federally protected rights.

27. On or about November 1, 2015, Defendant M&T Bank Corporation acquired Hudson Savings Bancorp, Inc. and its subsidiary, HCSB.

28. On information and belief, M&T expressly or impliedly assumed all legal liability for HCSB's employment practices in connection with this acquisition.

29. Shareholders of Hudson Savings Bancorp, Inc. and HCSB became shareholders in M&T through the acquisition; HCSB ceased to conduct business upon the acquisition; HCSB's ordinary business liabilities were assumed by M&T; and HCSB's operations were merged into

M&T, with M&T continuing to operate HCSB bank branches under the M&T name and employing largely the same supervisory employees at those branches.

30.     M&T also knew or should have known of the above-described Charge of Discrimination because the Charge was pending at the time of the acquisition.  In addition, an HCSB executive who knew of the Charge and the allegations under EEOC investigation prior to the acquisition was retained as an executive by M&T.

31.     Defendant is the successor to HCSB and is therefore liable for the unlawful employment practices complained of above.

32.     M&T failed to correct the unlawful employment practices of HCSB alleged above.

<u>PRAYER FOR RELIEF</u>

Wherefore, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in disability discrimination against aggrieved persons, and from engaging in any employment practice that discriminates on the basis of disability.

B.     Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities and reasonable accommodations for qualified individuals with disabilities and that eradicate the effects of its past and present unlawful employment practices.

C.     Order Defendant to make the Aggrieved Individuals whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other

affirmative relief necessary to eradicate the effects of its unlawful employment practices, including reinstatement of the Aggrieved Individuals.

       D.     Order Defendant to make the Aggrieved Individuals whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

       E.     Order Defendant to make the Aggrieved Individuals whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices desribed above, including emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, in amounts to be determined at trial.

       F.     Order Defendant to pay the Aggrieved Individuals punitive damages for the malicious and/or reckless conduct described above, in amounts to be determined at trial.

       G.     Grant such further relief as the Court deems necessary and proper to the public interest.

       H.     Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.


Dated: July 6, 2017
          New York, New York

                                        JAMES L. LEE
                                        Deputy General Counsel

                                        GWENDOLYN YOUNG REAMS
                                        Associate General Counsel

                                        U.S. EQUAL EMPLOYMENT
                                        OPPORTUNITY COMMISSION
                                        131 M Street, N.E.
                                        Washington D.C. 20507


                                        JEFFREY BURSTEIN
                                        Regional Attorney

                                        JUSTIN MULAIRE
                                        Supervisory Trial Attorney

                                        s/Amos B. Blackman
                                        AMOS B. BLACKMAN
                                        Trial Attorney

                                        U.S. EQUAL EMPLOYMENT
                                        OPPORTUNITY COMMISSION
                                        New York District Office
                                        33 Whitehall Street, 5th Floor
                                        New York, NY 10004-2112
                                        (212) 336-3706 (telephone)
                                        (212) 336-3623 (fax)
                                        amos.blackman@eeoc.gov